U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED   Nov 02 2020

CAROL L. MICHEL
CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA



## BILL OF INFORMATION FOR CONSPIRACY TO COMMIT BRIBERY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NUMBER: 20-116 |
| v. | * | SECTION: D (2) |
| ERIK MARTIN | * | VIOLATIONS: 18 U.S.C. § 371 |
| | | 18 U.S.C. § 201(b)(2) |
| | * | |
| | * | |
| *   *   * | | |

The United States Attorney charges that:

### COUNT 1

**A.  AT ALL MATERIAL TIMES HEREIN:**

1.  United States Marine Corps (USMC) Marine Forces Reserve (MARFORRES), located at 2000 Opelousas Ave., New Orleans, LA 70114, was the headquarters command for approximately 100,000 Reserve Marines and 160 training centers located across 47 states. MARFORRES was responsible for, among other things, providing transportation to trained units and qualified individuals to mobilize in times of war, national emergency, and contingency operations.

___ Fee _____
___ Process _____
___ Dktd _____
___ CtRmDep _____
___ Doc. No _____

2. Erik MARTIN (MARTIN) was a GS-9 employee in the Distribution Management Office (DMO) MARFORRES G-4. Specifically, **MARTIN** was a supervisory traffic management specialist in the transportation of people section. In this capacity, **MARTIN** was responsible for, among other things, coordinating the bus transportation of all Marine Corps Reserve forces as well as overseeing civilian and military members tasked with booking bus transportation for the aforementioned forces. In furtherance of his duties, **MARTIN** was entrusted to award, issue, and pay transportation contracts for the movement of Marine Corps personnel. Based on his employment status, **MARTIN** was a "public official," as that term is defined in Title 18, United States Code, Section 201(a)(1).

3. Employees of the DMO received requests for bus travel from Marine Corps employees via a computer system known as "T3." If the request for transportation was approved, it was then sent to the DMO of MARFORRES, which was responsible for finding a bus carrier to accomplish the movement.

4. DMO personnel were instructed to submit bids to approximately three to four bus companies in the regional area of where a movement would occur. The companies would then respond, and generally the most cost-effective carrier received the contract for the movement.

5. Employees in the DMO were directed to use carriers from a Department of Defense (DOD) approved list, a copy of which was physically maintained in the DMO. Employees in the DMO could consult with companies not on the DOD-approved list only in special circumstances, such as a last-minute booking, or in situations where DOD-approved carriers could not provide the requested transportation.

6. Company A was a bus brokerage company based in Atlanta, GA. Company A provided bus transportation services to more than 300 cities in North America through

2

independent, third-party charter companies. Before 2019, Company A occasionally provided bus transportation services to MARFORRES.

7. Company A was not on the DOD-approved carrier list.

8. Co-Conspirator A was employed as a Senior National Account Manager at Company A from on or about November 24, 2014, until his termination on or about June 17, 2019. As a Senior National Account Manager, Co-Conspirator A's job duties included booking transportation for clients (including the military), managing high value customer accounts, providing pricing approvals, and making decisions impacting the sales floor. Co-Conspirator A was compensated for his duties through a base salary plus a commission. This commission was structured in a manner where Co-Conspirator A's commission increased as he generated more profit.

9. Co-Conspirator A often used an alias, P.F., when interacting with personnel at MARFORRES.

10. In about early 2019, Co-Conspirator A started his own competing transportation brokerage company, Company B, without Company A's knowledge. Company B was not on the DOD-approved carrier list.

**B.   THE CONSPIRACY:**

Beginning on or about January 1, 2019, and continuing until at least September 1, 2020, in the Eastern District of Louisiana and elsewhere, defendant, **ERIK MARTIN**, and others known and unknown to the United States Attorney, did knowingly and willfully combine, conspire, confederate and agree to corruptly demand, seek, receive, accept, and agree to receive or accept personally something of value in return for being influenced in his performance of an official act, in violation of Title 18, United States Code, Section 201(b)(2).

C.  **NATURE AND PURPOSE OF THE CONSPIRACY:**

1. The nature and purpose of the conspiracy included the following: (a) to facilitate Co-Conspirator A receiving contracts for transportation from MARFORRES; (b) to provide bribes to **MARTIN** in exchange for agreeing to direct, directing, and paying contracts from MARFORRES to Co-Conspirator A; and (c) to enrich the co-conspirators through the conspiracy.

D.  **MANNER AND MEANS OF THE CONSPIRACY:**

The conspiracy was carried out through the following manner and means, among others:

1. **MARTIN** met Co-Conspirator A in approximately 2016, when Co-Conspirator A was working for Company A. MARFORRES used Company A to provide transportation for a movement of Marines at that time. MARFORRES did not regularly use Company A because they were not on the DOD-approved vendor list. **MARTIN** knew Co-Conspirator A by his alias, P.F.

2. In about early 2019, Co-Conspirator A contacted **MARTIN** and stated that he could compensate **MARTIN** in exchange for Co-Conspirator A receiving more transportation contracts from MARFORRES.

3. **MARTIN** agreed that he would direct transportation contracts to Co-Conspirator A in exchange for payment of money.

4. Subsequently, between on or about April 25, 2019, and on or about July 1, 2019, **MARTIN** caused Co-Conspirator A to receive at least 70 payments totaling more than $1,900,000 into a financial account controlled by Co-Conspirator A from a MARFORRES credit card.

5. Per their agreement, between on or about May 23, 2019 and on or about June 20, 2019, in return for **MARTIN** agreeing to perform official acts, namely steering transportation contracts to Co-Conspirator A, Co-Conspirator A directed and attempted to direct at least four payments totaling over $250,000 to a financial account under **MARTIN**'s custody and control.

E.   **OVERT ACTS:**

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed, in the Eastern District of Louisiana, and elsewhere, the following overt act, among others:

1. On or about June 14, 2019, Co-Conspirator A transmitted a bribe via a wire transfer from the Northern District of Georgia to the Eastern District of Louisiana, namely from a financial account under Co-Conspirator A's custody and control to a financial account under **MARTIN**'s custody and control, in the amount of approximately $70,500.00.

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF FORFEITURE

1. The allegations of Count 1 are incorporated in this Bill of Information by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States.

2. As a result of the offenses alleged in Count 1, defendant, **ERIK MARTIN**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c), any property real or personal which constitutes or is derived from proceeds traceable to said offense, including but not limited to the following:

> Square, Inc., account number 37RAR0M8S3FT7, held in the name of Co-Conspirator A;
>
> Square, Inc., account number 5Z39WTDHZ8YQW, held in the name of Co-Conspirator A;
>
> Regions Bank, account number 0257914788, held in the name of Co-Conspirator A.

3. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

5

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third person;

  c. has been placed beyond the jurisdiction of the Court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be subdivided without difficulty;

the United States shall seek a money judgment and, pursuant to Title 21, United States Code, Section 853(p), forfeiture of any other property of the defendant up to the value of said property.

            PETER G. STRASSER
            UNITED STATES ATTORNEY

            _____
            MYLES D. RANIER
            Assistant United States Attorney
            Louisiana Bar No. 30029

New Orleans, Louisiana
November 2, 2020

No. _____

# United States District Court
## FOR THE
EASTERN _____ DISTRICT OF ____ LOUISIANA ____

UNITED STATES OF AMERICA

vs.

ERIK MARTIN

BILL OF INFORMATION FOR
CONSPIRACY TO COMMIT BRIBERY

Violation(s):  18 U.S.C. § 371 & 201(b)(2)

Filed _____, 20 __20__

_____, Clerk.

By _____, Deputy

*Assistant United States Attorney*
MYLES D. RANIER